IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.           Case No.  16-10043-01-JWB

COBEN A. MCRAE,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to vacate sentence pursuant to 28 U.S.C. § 2255. (Doc. 179.) The motion has been fully briefed and is ripe for decision.[1] (Doc. 181.) The motion is DENIED for the reasons stated herein.

**I.  Procedural History**

On September 23, 2015, Defendant and co-defendant Preston Onwu flew to Wichita, Kansas, from New York City. After renting a vehicle, they engaged in a three-day criminal shopping spree in which they used counterfeit credit cards and access devices to purchase computers, other electronics, jewelry, clothing, gasoline, food, and gift cards. (Doc. 143 at 12.) Their criminal conduct ended on September 25 when they were arrested by the City of Wichita police. Defendant was charged in Sedgwick County, Kansas District Court with several counts of felony identity theft and felony criminal use of a financial card. (*Id.* at 26.) The state case was docketed as *State of Kansas v. McRae*, Case No. 15 CR 2794. On February 16, 2016, Defendant was released from state custody shortly after he entered a no contest plea. Defendant was sentenced in Case 15 CR 2794 on June 22, 2016. (Doc. 143 at 26.)

---

[1] Defendant did not file a reply and the time for doing so has now passed.

1

On March 17, 2016, Defendant and his co-defendant were charged by way of federal indictment with one count of mail fraud in violation of 18 U.S.C. § 1341, seventeen counts of wire fraud in violation of 18 U.S.C. § 1343, one count of possession of counterfeit access devices in violation of 18 U.S.C. § 1029, and sixteen counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. (Doc. 1.) Defendant was arrested and later released on bond with supervision. (Doc. 15, 16.) His trial was initially set for May 3, 2016. (Doc. 20.)

There were several pretrial motions filed in this case, including a motion to suppress. Defendant also had four different attorneys throughout the proceedings. On March 30, 2017, shortly after his motion to suppress was denied, Defendant filed a pro se motion asking for new counsel. (Doc. 62.) Defendant's motion was granted and the court appointed CJA counsel Mark Sevart. (Doc. 70.) On August 21, 2017, Defendant moved for a continuance of the trial, which was denied. (Docs. 72, 73.) The government then moved to dismiss several counts without prejudice prior to trial. (Doc. 75.) The trial was set to begin on September 12, 2017. On the morning of trial, Defendant failed to appear and a warrant was issued for his arrest. (Doc. 78.)

On January 30, 2018, a superseding indictment was returned by the grand jury charging Defendant with the same counts alleged in the original indictment but adding a charge for failure to appear in a violation of 18 U.S.C. § 3146(a)(1). (Doc. 89.) In December 2019, after learning that Defendant was arrested in Georgia, the United States filed a motion for writ of habeas corpus ad prosequendum which was issued by the court. (Doc. 96, 97.) According to the presentence report, Defendant was arrested in Georgia in October 2019 after he and two other individuals used forged identity documents to pass fraudulent checks at banks in Forsyth County, Georgia. (Doc. 143 at 28.) Those charges were still pending in December 2019. Defendant was then brought to Kansas on the writ on February 18, 2020. (Docs. 95 and 98.) The trial was set but continued

several times due to the COVID-19 pandemic. Defendant's third attorney, Mark Schoenhofer, entered his appearance on June 16, 2020. (Doc. 112.) On October 21, 2020, Defendant notified the court that he intended to plead guilty. (Doc. 126.) Subsequently the change of plea hearing was canceled and the matter was set for trial on January 11, 2021. (Doc. 129.) On December 14th, the trial date was continued until March 1, 2021, due to the COVID-19 Pandemic. (Doc. 130.) On January 21, 2021, Defendant again notified the court of his intent to plead guilty. (Doc. 131.) On February 8, pursuant to a plea agreement under Fed. R. Crim. P. 11(c)(1)(C), Defendant pleaded guilty to count 1 (mail fraud), count 34 (aggravated identity theft), and count 36 (failure to appear). (Doc. 137.) The plea agreement requested that the court impose an eighteen month term of imprisonment for Count 1, a twenty-four month term of imprisonment on Count 34, to run consecutive to the term imposed for Count 1, and an eighteen month term of imprisonment for Count 36, to run consecutive to the terms of imprisonment for Counts 1 and 34. The parties also requested the court to run the sentences imposed on Counts 1, 34, and 36 concurrent with any sentence imposed in Case 15 CR 2794. (Doc. 137 ¶3). It also contained a waiver of Defendant's right to appeal and/or collateral attack. (*Id.* at ¶10.)

Defendant's sentencing was scheduled for April 29, but then it was reset by the court for May 6. (Doc. 139.) On April 9, less than a month before sentencing, Defendant filed a motion to withdraw his plea of guilty and again sought new counsel. (Doc. 140.) Defendant's counsel, Mr. Schoenhofer, filed his own motion to withdraw. (Doc. 141.) The court held a hearing on May 6 and granted the motion to withdraw. The court appointed David Rapp as counsel for Defendant. (Doc. 148.) Notably, in Case 15 CR 2794, Defendant's parole expired on June 14, 2021, and his sentence was thus discharged at that time.

The court scheduled a hearing for the motion to withdraw on July 15, 2021. (Doc. 147.) Prior to the hearing, however, Defendant filed a motion to withdraw his motion. (Doc. 157.) The court granted the motion and set sentencing on August 10, 2021. (Docs. 158, 159.) Due to the spread of COVID-19 at the jail where Defendant was detained, the court reset sentencing to September 14, 2021. (Doc. 162.) At sentencing, Defendant advised the court had he had reviewed the presentence report with his attorney, that he was ready to proceed, and that he was satisfied with his counsel. (Doc. 171 at 2–4.) The court noted that Defendant had filed two objections to the presentence report and asked the parties if a ruling was necessary if the court sentenced Defendant in accordance with the parties' plea agreement. Both the government and defense counsel stated that the court need not rule upon the objections in that circumstance. (*Id.* at 4–5.) The court then addressed the terms of the plea agreement and stated that any sentence imposed in this case could not run concurrent to Case 15CR2794 because it was discharged on June 14, 2021. (*Id.* at 9.) The court then asked whether the parties still wanted to proceed with the "remainder of the sentence as proposed under the plea agreement?" (*Id.*) Both parties stated that they wanted to proceed. Mr. Rapp asked the court to recommend that Defendant receive "full credit against his federal sentence for any time that is creditable against it… [t]here may be additional credit for time served available depending on what the State of Georgia does." *Id.* at 10. The court agreed and stated that if Georgia declines to prosecute defendant, he would likely receive credit for some of the time he had served while on the writ.[2] Mr. Rapp then had an off-the-record discussion with his client and again advised the court that they were ready to proceed. The court then asked Defendant if he had anything he wanted to say, and Defendant responded: "No, Your Honor." (*Id.* at 11). The court announced its intended sentence, which followed the terms of imprisonment set

---

[2] At the time of sentencing, Defendant's Georgia case remained pending.

forth in the plea agreement. Neither party objected to the sentence. The court then accepted the plea agreement in accordance with Rule 11(c)(1)(C) and imposed sentence. (*Id.* at 15-17.)

Defendant filed a notice of appeal. The Tenth Circuit dismissed the appeal after determining it was precluded by the appeal waiver. In doing so, the court of appeals discussed that the district court had adopted the parties' proposed sentence. (Doc. 180 at 2.) Defendant has now filed this motion to vacate arguing that his attorney was ineffective for allowing the case to proceed at sentencing because he told Mr. Rapp that he didn't want to go forward if the federal sentence could not be run concurrent with his Kansas case. (Doc. 179.)

The government opposes the motion and argues that Defendant has failed to meet his burden under *Strickland*. Alternatively, the government argues that Defendant's claim falls under the waiver in his plea agreement.

**II.    Standard**

Section 2255(a) of Title 28 of the U.S. Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing. 28 U.S.C. § 2255(b). However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion. Rule 4(b), Rules Governing Section 2255 Proceedings. *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

5

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1964 (2017) (citation omitted.) "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III.   Analysis

Defendant argues that his counsel was ineffective for failing to advise the court that Defendant wanted to withdraw his guilty plea at sentencing after learning that his state sentence was discharged.  The government argues that Defendant cannot meet either prong under *Strickland*.  The court agrees with the latter argument.

The first prong requires the court to determine whether counsel's performance fell below an objective standard of reasonableness.  Defendant argues that he had notified his counsel that he did not want to continue with the sentencing if his Kansas state sentence could not be run concurrent with his federal sentence.  (Doc. 179 at 5.)  Although not clear, Defendant appears to be claiming that he told his counsel that he did not want to proceed when they spoke privately during the sentencing hearing.  Notably, however, in addition to asking counsel about the parties' positions with respect to moving forward on sentencing, the court also asked Defendant if he had

6

anything to say after his discussion with counsel. In response, Defendant said "No, your honor." (Doc. 171 at 11.) Defendant offers no explanation in his petition as to why he failed to notify the court that he did not want to continue with sentencing. Moreover, Defendant was under oath during the sentencing hearing and also informed the court that he was satisfied with his counsel. Defendant's statements made on the record cannot be reconciled with his position in his motion. Had Defendant wanted to notify the court that he would like to withdraw the plea of guilty, he could have done so himself during the sentencing hearing and the court would have considered it at that time.

Based on the record, it is clear that counsel's performance was entirely reasonable. Defendant's Kansas case was discharged on June 14, 2021, and, as a result, could not be run concurrent with his federal sentence which had yet to begin. Recognizing this, Defendant's counsel sought to have a recommendation from the court to BOP to give Defendant credit for any time that was allowed.[3] The court also notes that this case has been unnecessarily prolonged by Defendant's own conduct and his continued displeasure with his court appointed counsel. Had Defendant proceeded to his initial sentencing date, his Kansas case would have been undischarged at that time. The court finds that the allegations in the petition fail to show that counsel's representation fell below an objective standard of reasonableness

Moreover, even if the allegations created a factual issue as to whether counsel was ineffective, Defendant has not shown prejudice as a result. To establish prejudice, Defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[3] Although Defendant argues that the failure to run his sentence concurrent with his Kansas state sentence resulted in an extra 26 months of time, Defendant fails to explain how he arrived at this determination. Defendant was only in custody on the Kansas state charge for approximately five months. The remaining time that Defendant was in custody involved his detention on crimes he committed in Georgia and he was present in Kansas on the writ. Therefore, that period of time would be attributed to his Georgia charge which was not related to the federal charges. Because the Georgia charges had not been resolved, both defense counsel and the court recognized that the time he was in custody could potentially be credited to his federal sentence in the event Georgia declined to prosecute.

proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of a claim challenging a guilty plea, *Strickland's* prejudice prong ordinarily requires a defendant to demonstrate "there is a *reasonable probability* that, but for [his] counsel's errors, *he would not have pleaded guilty* and would have insisted on going to trial." *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 2756 (2022) (emphasis in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In doing so, Defendant "must convince the court that [his] decision to reject the plea ... would have been *rational under the circumstances*." *Id.* at 1112 (emphasis in original) (discussing that the "rationality factor" has been incorporated and subsumed into *Strickland's* reasonable-probability prejudice inquiry) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)). It is "often quite difficult" for defendants who have entered a guilty plea to meet this standard. *Id.* Here, Defendant does not even attempt to satisfy his burden. At no point in his petition does Defendant make any argument that a decision to withdraw his plea and go to trial on the 36-count superseding indictment would have been rational. Significantly, Defendant does not even assert that he wanted to go to trial.[4] "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Id.* at 1112.

The ultimate issue here is whether going to trial would have been "rational in light of the objective circumstances" of Defendant's case. *Heard v. Addison*, 728 F.3d 1170, 1184 (10th Cir. 2013). Defendant was charged with one count of mail fraud, seventeen counts of wire fraud, one count of possession of counterfeit access devices, sixteen counts of aggravated identity theft, and one count of failure to appear. Based on the evidence at the suppression hearing, the government had substantial evidence of Defendant's guilt which was, in large part, obtained as a result of the

---

[4] Defendant does not contend that he would have attempted and been successful in negotiating a better plea deal. There is also no evidence in the record that the government would have been willing to re-negotiate the plea agreement.

execution of two search warrants. This evidence was seized from the vehicle Defendants used in their fraudulent shopping spree and their hotel room. It included numerous counterfeit credit cards, fraudulently purchased electronics, fraudulently purchased clothing, gift cards, receipts, counterfeit drivers licenses, and other personal property belonging to Defendants. (Doc. 61 at 5.) At the plea hearing, the government also informed the court that it would be able to prove beyond a reasonable doubt that Defendant and his co-defendant devised a scheme to defraud and obtain property by false or fraudulent pretenses and, in executing that scheme, they delivered two boxes containing sixteen fraudulently obtained computers and iPads to Federal Express and paid to ship the items to Defendant's home in New York. (Doc. 142 at 44.) The government further stated that it could prove that Defendant purchased computers and iPads by using counterfeit credit cards on multiple occasions by using a means of identification that belonged to a real person without that individual's permission. (*Id.* at 45–46.) During the plea hearing, Defendant admitted under oath that everything that the prosecutor said about the facts of the case was true and that the factual basis in the plea agreement was correct. (*Id.* at 47–48.)

Further, by pleading guilty, Defendant avoided a potentially significant sentence on all 36 counts. (*See* Doc. 181 at 10–11) (discussion of the penalties for each charge Defendant faced). Given the significant number of charges and the substantial evidence in this case, there is no evidence to support the conclusion that going to trial would have been a rational decision in this case.

Defendant has not met his burden here and has failed to show that he suffered any prejudice as a result of his counsel's performance. In sum, the record shows Defendant is not entitled to relief and that his petition should be dismissed.[5]

---

[5] Because Defendant's claim fails on the merits, the court declines to address the government's alterative argument that the waiver precludes his claim.

## IV.    Conclusion

Defendant's motion to vacate or correct sentence under 28 U.S.C. § 2255 (Doc. 179) is DISMISSED.

IT IS SO ORDERED.  Dated this 17th day of October 2022.

                                                                        s/ John W. Broomes  
                                                                        JOHN W. BROOMES  
                                                                        UNITED STATES DISTRICT JUDGE